■ JOSEPH KORFF, Appellant-Respondent, v RICHARD A. CORBETT et al., Respondents-Appellants. [65 NYS3d 498]—

Orders, Supreme Court, New York County (Eileen Bransten, J.), entered June 17, 2016, which, insofar as appealed from as limited by the briefs, granted defendants' motion for summary judgment declaring that nonparty CSAT, L.P. is not defendants' affiliate and that its gross revenue does not come within the scope of paragraph 3 of the letter agreement on which plaintiff sues, and dismissing part of the contract claim on statute of limitations grounds, denied defendants' motion as to the remainder of the contract claim, and granted plaintiff's motion for summary judgment dismissing the ninth affirmative defense (based on General Obligations Law § 5-1105), unanimously modified, on the law, to deny plaintiff's motion, and grant defendants' motion as to the entire contract claim, and otherwise affirmed, without costs.

This appeal revolves around a one-page letter agreement between plaintiff, an attorney and real estate consultant, on the one hand, and defendant Corbett and "all entities in which he has an interest," on the other. In its entirety, the agreement, which was signed by plaintiff and countersigned by Corbett and International Plaza in or about July 1990, the entity under which Corbett did business, stated as follows:

"Dear Dick,

"At least one of us had in mind a 50-50 partnership several years ago. To avoid unproductive controversy:

"1. All my firm's legal bills and interest thereon . . . will be cleared up out of the first available financing sources. You will pay $25,000 per month against such bills until that time.

"2. The equivalent of $500,000 plus interest at 15% per annum from September 5, 1985 will be paid to me from the first decent term financing source (for example: sale, lease, joint venture, or more than 3 years overall financing).

"3. You will pay upon receipt by International Plaza, its partners or affiliates, 5% of gross receipts (excluding gross receipts from the current golf course operation) until $26,250,000 is paid when the percentage will be 10% . . .

"Sincerely,

"Joseph Korff."

Although paragraph 1 of the agreement is not at issue here, we note that the legal services referenced therein were delivered beginning in the early 1980s, primarily by plaintiff as a solo practitioner, in connection with Corbett's efforts to develop a 135-acre parcel of land in Tampa, Florida, to which he and International Plaza had acquired the ground lease in 1979. Plaintiff maintains, and defendants do not seriously dispute, that his role with respect to the development extended well beyond traditional legal work to such a degree that plaintiff, in his own words, was the "spearhead" of the project. The project was a resounding success, resulting in a complex consisting of a luxury mall, hotels and office towers.

Plaintiff claims that, even though defendants obtained significant financing for the project, he was never paid the $500,000 plus interest provided for in paragraph 2 of the agreement. He further alleges that, despite defendants' receipt of significant revenue in connection with the project, he was never paid in accordance with the revenue sharing contemplated by paragraph 3 of the agreement. Defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (1), (5), and (7), and Supreme Court granted the motion on the ground that the agreement was too indefinite to be enforced. However, this Court reversed, finding, in relevant part, that "[w]hile the parties' agreement is somewhat imprecise, it is clear from its face that they intended to contract. The introductory sentence suggests that a meeting of the minds was perhaps not previously achieved, but the language '[t]o avoid unproductive controversy' suggests that the parties were now settling their differences and putting their agreement in writing. The first paragraph, which is not at issue in this action, refers to plaintiff's firm's outstanding legal bills and supports a finding that there was consideration for the agreement. The next paragraph provides that plaintiff, as opposed to his firm, was to be paid '$500,000 plus interest at 15% per annum from September 5, 1985.' The amount delineated is specific and was clearly agreed to by the

parties, and the language used suggests that this amount had already been earned by plaintiff" (18 AD3d 248, 250-251 [1st Dept 2005]). In light of this Court's reversal, defendants served an answer, in which they interposed a ninth affirmative defense asserting that "[t]he claims in the Complaint are barred due to . . . failure to state the consideration for the alleged agreement on which the Complaint is based."

Upon the completion of discovery, defendants moved for summary judgment dismissing the complaint. Among other things, defendants argued that the agreement was void under General Obligations Law § 5-1105, which bars agreements based on consideration already performed, unless such consideration is explicitly recited in the agreement. Defendants pointed out that the agreement was silent about the legal services provided by Korff personally, before he joined a law firm in 1989. In addition to this threshold argument, defendants argued that any claim plaintiff had under paragraph 2 of the agreement was barred by the statute of limitations, since defendants received financing for the project in February 1994, and plaintiff did not file suit until more than nine years later. As for the claim brought under paragraph 3, defendants argued that defendant CSAT, Inc., an entity set up by Corbett to receive revenue generated by the project, was not an "affiliate" of Corbett's when the agreement was executed, and so could not be ordered to pay "gross receipts" to plaintiff.

In opposition, plaintiff argued that the General Obligations Law issue had been decided, since this Court's 2005 decision upholding the breach of contract cause of action stated that the agreement supported the allegation that there was underlying consideration. In any event, he claimed, the consideration was not past consideration requiring an express recitation. Rather, his forbearance from enforcing his claim to legal fees past due and owing constituted present consideration. Plaintiff further contended that his claim under paragraph 2 was not time-barred, since the financing secured by defendants in 1994 was not "decent term financing" as defined by the agreement and since, in any event, plaintiff had separately agreed with the financing source not to seek payment out of those funds. As for the claim under paragraph 3, plaintiff argued that the agreement was sufficiently forward looking that it would embrace an affiliate formed after the agreement was executed.

The court granted defendants' motion in part and denied it in part. While the court found that law of the case did not bar defendants' arguments based on the General Obligations Law, it also found that the agreement was supported by sufficiently

recited past consideration, since paragraph 2 showed that plaintiff "agreed to forbear . . . from collecting the sums [that had been] owed to him" since September 1985. The court further found that paragraph 3 was supported by sufficiently recited past consideration since "[t]he contracting parties utilize terms clearly demonstrating that the purpose of the agreement is to settle past disagreements regarding [plaintiff]'s payment for work performed on the project."

Nevertheless, the court ruled that the claim for breach of paragraph 2, and the related claims for unjust enrichment, a declaratory judgment and an accounting, should be dismissed because, inter alia, they were time-barred. The court held that the record established that "more than 3 years overall financing" was obtained by defendants no later than February 17, 1994. Regarding paragraph 3 of the agreement, the court dismissed plaintiff's claims as against CSAT on the ground that CSAT was not, at the time the agreement was executed, a partner or affiliate of Corbett or International Plaza and so could not be directed to share gross revenue.

General Obligations Law § 5-1105 provides: "A promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed." It essentially codifies the notion that "[g]enerally, past consideration is no consideration and cannot support an agreement because 'the detriment did not induce the promise.' That is, 'since the detriment had already been incurred, it cannot be said to have been bargained for in exchange for the promise' " (*Samet v Binson*, 122 AD3d 710, 711 [2d Dept 2014], quoting *Umscheid v Simnacher*, 106 AD2d 380, 381 [2d Dept 1984]). However, General Obligations Law § 5-1105 makes an exception where the past consideration is explicitly recited in a writing. To qualify for the exception, the description of the consideration must not be "vague" or "imprecise," nor may extrinsic evidence be employed to assist in understanding the consideration (*see Clark v Bank of N.Y.*, 185 AD2d 138, 140 [1st Dept 1992], *appeal withdrawn* 81 NY2d 760 [1992]). Defendants argue that, because plaintiff provided all of his legal services before the agreement was signed, and because paragraphs 2 and 3 of the agreement say nothing about the past consideration he gave in exchange for the benefits conferred upon him therein, the agreement is not enforceable. Plaintiff does not dispute this;

rather, he argues that General Obligations Law § 5-1105 does not apply at all, because the agreement was based on present, not past, consideration. Plaintiff claims that the agreement constitutes a compromise of his claim to a partnership interest in the project and his forbearance from enforcing his right to collect legal fees.

Initially, we reject plaintiff's argument that defendants waived their defense under General Obligations Law § 5-1105. The argument is based on defendants' failure to cite the statute in their answer. It is true that defendants' affirmative defenses did not cite that section. However, in alleging in their ninth affirmative defense that plaintiff "fail[ed] to state the consideration for the alleged agreement on which the Complaint is based," defendants sufficiently invoked the objection, under New York's liberal pleading policy (CPLR 3026). Furthermore, defendants' memorandum of law in support of their summary judgment motion mentioned General Obligations Law § 5-1105, and plaintiff availed himself of the opportunity to oppose the defense in his memorandum of law. Under these circumstances, "failure expressly to have pleaded the defense in the answer did not mandate denial of defendant[s'] motion for summary judgment based on the statute" (*Rogoff v San Juan Racing Assn.*, 54 NY2d 883, 885 [1981]).

We further reject plaintiff's argument that this Court's decision in the prior appeal from an order granting defendants' motion to dismiss the complaint, pursuant to CPLR 3211 (a) (1), (5) and (7), dictates the outcome of this one. The prior appeal did not involve General Obligations Law § 5-1105; rather, the issue was whether the agreement was sufficiently definite to constitute an enforceable contract. Further, this Court noted, in performing that analysis, that it was to construe the agreement somewhat liberally, since "[a] strict application of the definiteness doctrine could actually defeat the underlying expectations of the contracting parties" (18 AD3d at 250 [internal quotation marks omitted]). To that end, this Court avoided making any conclusions as to the parties' intent, but rather attempted to infer what the parties could reasonably have meant, based on the language of the agreement. Thus, we observed that paragraph 1 of the agreement "supports a finding" that the agreement included mutual consideration (*id.*). Similarly, we stated that the language employed in paragraph 2 "suggests that [the specific payment of $500,000] had already been earned by plaintiff" (*id.* at 250-251). We further noted that the requirement that defendants pay the $500,000 to plaintiff only upon their securing a "decent term financing

source" was "further evidence of consideration" (*id.* at 251). These statements by this Court in no way reflect a conclusion that the agreement was, as a matter of law, supported by consideration. Rather, they merely express the belief that the agreement contained enough language favorable to plaintiff that it would be premature to declare it unenforceable without a full trial or summary judgment record. It is for this reason that "the law of the case doctrine does not apply when a motion to dismiss is followed by a summary judgment motion" (*Moses v Savedoff*, 96 AD3d 466, 468 [1st Dept 2012]).

Turning to the merits, we observe that the agreement does not say why defendants are agreeing to pay plaintiff the sums recited therein. Although paragraph 1 says, "All my firm's legal bills and interest thereon . . . will be cleared up out of the first available financing sources," only plaintiff is the beneficiary of the promises made by defendants in paragraphs 2 and 3. Thus, while paragraph 1 arguably establishes the presence of consideration given by plaintiff's firm, the other two paragraphs say nothing of consideration given by plaintiff himself. One must rely on plaintiff's deposition testimony ("[t]he consideration for the July 1990 letter involved business services that I had rendered to" Corbett) or affidavit ("the claims here relate to my entitlement to compensation for work I . . . performed on behalf of Defendants prior to 1989") to discern the consideration for the payments promised by defendants there. As stated, in seeking the exception afforded by General Obligations Law § 5-1105, resort to such extrinsic evidence is impermissible (*Clark v Bank of N.Y.*, 185 AD2d at 140).

Plaintiff's argument that the agreement is supported by present consideration is also unavailing. First, we cannot conclude that the agreement reflects a settlement of claims, because, other than a vague reference in the first sentence to a desire "[t]o avoid unproductive controversy," the agreement bears no indicia of a settlement agreement, such as an obligation by plaintiff to tender a release of his claims or otherwise incur a new detriment. Plaintiff testified at his deposition that the agreement was a "settlement of differing points of view on what I should have received." However, that the agreement may have resolved what plaintiff was to receive for the work he had done in the past does not, without some new, executory promise on his part, create present consideration, and there is no evidence of such a promise. Defendants' own references to "settlement" in their internal memoranda are also too oblique to establish that plaintiff was tendering new consideration in exchange for payment. It bears reiterating that, to the extent

paragraph 1, in mentioning a "clear[ing] up" of legal bills and interest owed by defendants, can be construed as a promise to release a claim, the detriment is being borne by plaintiff's former law firm, not plaintiff individually.

The cases cited by plaintiff, *Holt v Feigenbaum* (52 NY2d 291 [1981]) and *Nolfi Masonry Corp. v Lasker-Goldman Corp.* (160 AD2d 186 [1st Dept 1990]), do not support his argument that the agreement is based on present consideration in the form of forbearance. In each of those cases the plaintiff's agreement to forbear pursuing a claim against the defendant was plain, having been recited in the writing at issue. In contrast, in *Samet v Binson* (122 AD3d 710 [2d Dept 2014], *supra*), the plaintiff's decedent allegedly loaned the defendant a sum of money and, thereafter, the parties executed a document in which the defendant promised to pay the decedent a sum of money. The document did not mention the underlying debt or any other consideration for the payment. The court held that the document was unenforceable under General Obligations Law § 5-1105 because it was based on unrecited past consideration. There is nothing in the decision to suggest that the court would have ruled differently had the plaintiff asserted that the agreement should be construed as reflecting his forbearance on the underlying debt in exchange for payment. Here, similarly, there is nothing in the agreement that suggests that plaintiff was forbearing pursuing a claim, nor does anything in the record otherwise indicate that plaintiff had agreed not to assert his rights against defendants.

In view of the foregoing, we do not reach plaintiff's arguments for affirmative relief. Concur—Tom, J.P., Richter, Mazzarelli, Manzanet-Daniels and Gische, JJ.