| |
|---|
| **Elsa Zegelstein Revocable Living Trust v Nanto MK Corp.** |
| 2024 NY Slip Op 34011(U) |
| November 12, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 651743/2018 |
| Judge: Dakota D. Ramseur |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. DAKOTA D. RAMSEUR                   PART              34M

*Justice*

-------------------------------------------------------------------------X

THE ELSA ZEGELSTEIN REVOCABLE LIVING TRUST,

                                        Plaintiff,

                        - v -

NANTO MK CORP., KANAYA MASAHIRO, LIAN HUA
PIAO, PETER A CROSS, YING JIN ZHU, NANTO STUDIO
INC.

                                        Defendant.

-------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 651743/2018 |
| MOTION DATE | 03/31/2023 |
| MOTION SEQ. NO. | 005 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 005) 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

In 2018, plaintiff The Elsa Zegelstein Revocable Living Trust commenced this action to recover unpaid rent and for other breaches of a commercial property lease against corporate defendant Nanto MK Corp. (hereinafter, "Nanto"), as tenant, and individual defendants Kanaya Masahiro (or Mark Kanaya), Peter Cross, and Ying Jin Zhu as guarantors and/or principals of Nanto.[1] Plaintiff, as the owner of the property at 235 East 60th Street, alleges that defendants owe rent as a month-to-month tenant since Nanto remained in possession of the first-floor office space after the expiration of the parties' 5-year commercial lease running from December 31, 2009, through December 31, 2014. (NYSCEF doc. no. 1 at ¶¶ 9-10, 25-28, complaint.) It asserts causes of action for breach of contract (based upon the failure to pay rent *and* defendants' alleged unauthorized improvements made to the building's structure), an account stated, and "alter ego liability." (*Id.*, counts one through three.) In this motion sequence (005), plaintiff seeks to "amend its ad damnum clause and its pleadings" to reflect current invoices it says it is owed and for summary judgment pursuant to CPLR 3212 on each of its causes of action. (NYSCEF doc. no. 146, notice of motion.) In opposition, defendants cross move for summary judgment on plaintiff's three causes of action under the same CPLR provision. (NYSCEF doc. no. 171, notice of cross motion; NYSCEF doc. no. 179, notice of cross motion.) [2]

## BACKGROUND

On November 25, 2009, an entity named "J and E Realty" entered into a commercial lease ("the Lease") for the "235 East 60 street, first floor office, New York, N.Y. 10022" with

---

[1] Plaintiff had asserted causes of action against Lian Hua Piao and Nanto Studios but withdrew its claims against them without prejudice.
[2] Kanaya cross moved for summary judgment separately from his co-defendants.

**651743/2018  ELSA ZEGELSTEIN vs. NANTO MK CORP.**                              **Page 1 of 9**
**Motion No.  005**

Nanto MK Corp. (NYSCEF doc. no. 149, <u>lease agreement</u>.) As co-owners of Nanto, Kanya Masahiro and Lian Hua Piao (*id.* at ¶ 73) each executed personal guarantees of Nanto's obligations to pay rent. (NYSCEF doc. no. 150, <u>personal guarantees</u>). The lease term started on December 31, 2009, and was to end on December 31, 2014. The Lease had a $4,500 monthly rate in 2010, $5,000 in 2011 and 2012, and $5,250 in 2013 and 2014. In 2011, plaintiff alleges that Nanto, Kanaya, and Piao assigned Nanto's assets, including its rights under the Lease, to Cross, Zhu, and an entity named Nanto Health & Relaxation Center, Inc. in violation of paragraph H, subsection P, which prohibits the transfer of the lease within 24 months after the commencement of the Lease. (*See* NYSCEF doc. no. 149; NYSCEF doc. no. 155, <u>Nanto assignment and assumption of leases and contracts</u>.) Both Cross and Kanaya dispute whether this assignment, if there was one, breached the Lease agreement. Specifically, they cite an email written by Ricky Zegelstein (Elsa Zegelstein's daughter, who by this time was negotiating on her mother's behalf due to her poor health), wherein she explained, "My mother said fine about taking over the lease pending good credit rating." (NYSCEF doc. no. 181, <u>October 2011 email</u>; *see also*, NYSCEF doc. no. 177, <u>Zhu affidavit</u> ["At the meeting, Elsa told me that she was willing to approve the sale subject to receiving credit information from me"].) [3]

In the summer of 2014, Cross and Zhu began negotiating with Elsa and Ricky Zegelstein a renewal of the 2009 Lease. Cross and Zhu agreed, by email, to a new lease term that required them to pay $6,500 per month (*see Nanto MK Corp. v J&E Realty et al.*, NYSCEF index no. 650433/2015 [New York Supreme Court, Commercial Division, New York County], NYSCEF doc. no. 4, <u>October 2014 emails between Ricky and Cross</u>) and signed a proposed new lease dated January 1, 2015. In a separate email, Cross later informed Ricky that "this will confirm that I substituting [sic] myself for Mark Kanaya as the guarantor on the lease under the same terms that applied to Mark [Kanaya]." (NYSCEF doc. no. 158, <u>January 2015 email</u>.) Notwithstanding Cross or Zhu's understanding, neither Elsa nor Ricky Zegelstein signed the proposed new lease and sent notice that it was terminating Nanto's month-to-month tenancy and would need to vacate the building by March 1, 2015 (NYSCEF doc. no. 1 at ¶¶ 22-24.) In February 2015, Nanto commenced an action in Supreme Court, New York County (the aforementioned *Nanto v J&E Realty* action) to enforce what it believed was a valid renewed lease agreement. In 2017, the First Department found that both the original 2009 Lease and the proposed lease expressly provided that the parties would not be bound by their terms until J&E Realty delivered a fully executed copy of the lease, which, as mentioned above, they never did. (*See Nanto MK Corp. v J&E Realty*, 147 AD3d 695 [1st Dept 2017].) Accordingly, the court dismissed Nanto's complaint, and Nanto vacated the premises on April 1, 2017. (NYSCEF doc. no. 1 at ¶ 34.)

In this action, plaintiff alleges that (1) Nanto et al. performed unauthorized changes to the first floor's plumbing, electrical, and structural systems without plaintiff's approval, (2) it is entitled to rent at $12,000 per month from March 1, 2015, to September 1, 2016, $20,000 per month from September 1, 2016, to January 1, 2017, and $50,000 per month thereafter, as

---

[3] In the same affirmation, Zhu alleges that "shortly thereafter, Ricky Zegelstein informed Mr. Cross that her mother had changed her mind and would not approve the sale." (NYSCEF doc. no. 177 at ¶ 3.) (Under the Lease, any transfer of 20% or greater interest in Nanto shares would constitute an assignment and subject it to plaintiffs' approval. *Id.* at 62 [I].) As such, Zhu explained that Kanaya suggested an alternative plan, under which Kanaya would remain Nanto MK Corp.'s owner while Zhu would run the business and keep any profits. (*Id.* at 4.)

651743/2018   ELSA ZEGELSTEIN vs. NANTO MK CORP.                                    Page 2 of 9
Motion No.  005

2 of 9

reflected in notices/invoices for rent increases that Nanto did not oppose during the pendency of its 2015 action (*see* NYSCEF doc. no. 162, <u>notice of rent increases</u>; NYSCEF doc. no. 163, <u>invoices</u>.), and (3) damages related to Nanto, Kanaya, Cross, and Zhu's unauthorized assignment of the Lease. Neither party disputes that defendants paid $6,500 per month (per the parties' proposed renewal terms) during the pendency of Nanto's 2015 action. For relief, plaintiff seeks $534,141.18, covering, among other things, $34,555 in repair the premises, $90,500 in legal fees accrued defending the 2015 action, $52,000 for rent from September to December 2016 ($80,000 minus rent paid), $86,000 for rent from January and February 2017 ($100,000 minus rent paid), and $100,000 for rent March and April 2017 (*see* NYSCEF doc. no. 165, <u>October 2017 invoice</u>) and another $178,047.06 in legal fees (NYSCEF doc. no. 169 at 17, <u>plaintiff memo of law</u>). Alternatively, it seeks $300,849.06, or the Leases' Holdover Provision rate of $10,500 per month from January 2015 to April 2017, plus $132,478.02 in legal fees. (*See* NYSCEF doc. no. 168.)

## DISCUSSION

Under CPLR 3212 (b), a proponent moving for a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, producing sufficient evidence to eliminate any material issues of fact from the case. (*Brandy B. v Eden Cent. School Dist.*, 15 NY3d 297, 302 [2010]; *Kesselman v. Lever House Rest.*, 29 A.D.3d 302 [1st Dept 2006].) It must do so through admissible evidence. (*See Sears Holdings Mgt. Corp v Rockaway Realty Assoc.*, 176 AD3d 433, 433 [1st Dept 2019].) If the moving party establishes this showing, the burden shifts to the non-moving parties to raise a triable issue of fact. (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980].) Since summary judgment is an extreme remedy, the Court must draw all reasonable inferences in favor of the non-moving parties. (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012].)

As discussed above, plaintiff's ad damnum clause seeks relief for unpaid rent and costs and expenses related to alterations Nanto performed on the premises. The Court addresses the parties' summary judgment arguments as to each issue in turn.

*Plaintiff's Breach of Contract Claims*

To demonstrate entitlement to summary judgment on a breach-of-contract claim, plaintiff must establish the existence of a contract, its own performance, defendant's breach, and resulting damages. (*Lebedev v Blavatnik*, 193 AD3d 175, 182-183 [1st Dept 2021].) Here, plaintiff has demonstrated entitlement to summary judgment against Nanto under the 2009 Lease. The Lease's Holdover Provision states, "In the event Tenant remains in possession of the Demised Premises after the expiration of the term created hereunder, Tenant, at the option of the Landlord, shall be deemed to be occupying the Demised Premises as a tenant on a month-to-month basis at a monthly rental equal to two times the rent." (NYSCEF doc. no. 149 at ¶ 70.)

In opposition, defendants cite Real Property Law § 232-c, which, in pertinent part, states, "In the case of such a holding over by the tenant…if the landlord shall accept rent for any period subsequent to the expiration of such term, then, unless agreement either express or implied is made providing otherwise, the tenancy created by the acceptance of such rent shall be a tenancy from month to month." According to defendants, plaintiff's acceptance of its use-and-occupancy

[* 3]

payments at the rate provided for by the now unenforceable 2015 renewal lease created a month-to-month tenancy at that rate, meaning plaintiff is not entitled to any additional rent. This position, however, misses the critical, dispositive clause in § 232-c: "unless an agreement either express or implied is made provided otherwise." In expressly establishing that any holdover would create a month-to-month tenancy at twice the monthly rate, the 2009 Lease precludes § 232-c's applicability.

Similarly, their argument that their fraud counterclaim raises issues of fact is unavailing. In sum and substance, defendants reraise the arguments conclusively decided in the 2015 action: namely, that the original lease created an option to renew (NYSCEF doc. no. 15 at ¶ 12), that Ricky Zegelstein initially indicated that the Trust had accepted the new lease terms in October 2014 but then backed out without signing it in January 2015 (*id*. at ¶¶ 15-16, 20-21), and that defendants relied upon her statements even as she had no intention of re-leasing the premises to them (*id*. at ¶¶ 28-30.) [4] Yet, as discussed *supra*, the First Department previously noted that defendants admitted they had breached the 2009 Lease and could not rely on its renewal option and that the Trust and Zegelstein were, essentially, entitled to institute holdover proceedings since they had not entered into a binding new lease. All this is to say that defendants' fraud counterclaim focuses on Ricky Zegelstein and the Trust's conduct during negotiations in 2015, while plaintiff's breach of the lease agreement claim rests on the 2009 Lease and its Holdover Provision, which defendants have not, and cannot, argue was procured by fraud.

Notwithstanding the Holdover Provision, plaintiff seeks additional rent based on the notices and invoices it sent in or around 2016-2017, wherein it purported to raise defendants' rent during the pendency of the 2015 action. In its view, it is entitled to this relief on an account stated theory because defendants failed to timely object to the notices/invoices and, thus, acquiesced to their terms. (*See Speciner v Parr*, 252 AD2d 554, 555 [2d Dept 1998] ["By their silence and partial payments, the defendants expressed their agreement that the bills sent to them by the plaintiff were correct and would be paid."]) As the above citation makes clear, an essential element of an account-stated cause of action is an *agreement* with respect to the balance due. (*Digital Ctr., S.L. v Apple Indus. Inc.*, 94 AD3d 571, 572-573 [1st Dept. 2012]; *TM 18 Realty, LLC v Copper Wang, Inc.*, 222 AD3d 904, 905 [2d Dept 2023] ["An account stated is an agreement, express or implied, between the parties to an account based upon prior transactions between them with respect to the correctness of account items and a specific balance due on them."]) Here, while defendants may have remained silent with respect to each invoice sent, their silence cannot rationally be said to constitute an agreement to pay the increased rent since, at the very time plaintiff delivered the notices/invoices, defendants had already commenced their action over the amount of rent due to plaintiff. (*See K-Bay Plaza, LLC v Kmart Corp.*, 132 AD3d 584, 591 [1st Dept 2015] [holding that a tenant should have been granted summary judgment on a landlord's account stated cause of action "given the parties' dispute over the amount charged for rent escalation"]; *Reade v Cardinal Health, Inc.*, 12 AD3d 224, 225 [1st Dept 2004 ["Since the

---

[4] While defendants asserted the affirmative defense that The Zegelstein Revocable Trust does not have standing and is not a proper party, they have not raised such argument in opposition to summary judgment. (NYSCEF doc. no. 15, answer with counterclaims.) Further, in attempting to enforce the lease renewal, defendants not onlcy commenced their 2015 action against J&E Realty and J and E Zegelstein Partnership but included The Elsa Zegelstein Revocable Living Trust.

**651743/2018   ELSA ZEGELSTEIN vs. NANTO MK CORP.**
**Motion No. 005**

Page 4 of 9

record demonstrates, as a matter of law, that there was a 'dispute about the account' no claim for an account stated survives"], citing *Abbot, Duncan & Wiener v Ragusa*, 214 AD2d 412, 413 [1st Dept 1995].) As such, the Court finds that defendants are entitled to summary judgment as plaintiff's account stated claim.

Next, plaintiff contends that it is entitled to summary judgment as to liability against Cross, Kanaya, and Zhu for breaching their respective guaranty agreements. Plaintiff's documentary evidence establishes that Kanaya executed a personal guarantee in 2009 to secure the original lease. (NYSCEF doc. no. 150.) Plaintiff has also demonstrated that, on January 5, 2015 (five days after the first lease expired), when parties were negotiating a lease renewal, Cross sent an email in which he "confirm[ed] that I [will be] substituting myself for Mark Kanaya as the guarantor on the lease under the same terms that applied to Mark." (NYSCEF doc. no. 158.) Shortly thereafter, both Cross and Zhu signed an identical guaranty agreement with language stating that it was being executed "in order to induce the Landlord to enter into the Lease and for other valuable consideration." (*See* NYSCEF doc. no. 1, exhibit D.) As discussed above, however, in the first action, the First Department rejected defendants' position that the parties had executed an enforceable lease renewal. (*Nanto*, 147 AD3d at 696.) In this light, Cross argues that he agreed to be held liable as guarantor without consideration in return from plaintiff, and thus, the guaranty is unenforceable. [5]

Plaintiff's reply raises "[its]continued lease negotiations and forbearance of Holdover proceedings" as possible sources of valid consideration. As a matter of law, however, neither are a sufficient basis to establish valid consideration for Cross's guaranty. First, although Ricky Zegelstein avers that plaintiff elected not to enforce the Lease's Holdover Penalty Clause in return for Cross' guaranty (*see* NYSCEF doc. no. 147 at ¶28), neither the email nor the guaranty itself expresses, or even implies, any consideration other than the 2015 lease renewal. In *Reddy v Mihos* (160 AD3d 510, 513 [1st Dept 2018]), the First Department held that the plaintiff's promise— to forbear, like here, from commencing an action against the defendant—did not constitute consideration. This was because (1) nothing stated in the guaranty bound the plaintiff to that promise, and (2) the plaintiff's commitment could not be fairly inferred from the language of the guaranty itself. (*Id.*) Thus, the court concluded that, in the absence of a binding promise by the plaintiff, the guaranty was unenforceable. (*Id.*; *see also Korff v Corbett*, 155 AD3d 405, 410-11 [1st Dept 2017] [in holding guarantor agreement unenforceable for want of consideration, the First Department noted that "nothing" in the writing supported the plaintiff's claim that he had agreed to "forbear() pursuing a claim" in exchange for the promised payments].)

Here, not only is there nothing to suggest that Cross agreed to be a guarantor in return for plaintiff's promise to forgo bringing a holdover petition (in contrast to the more likely scenario where he expected a renewed lease), but the absence of any binding commitment on plaintiff's part is particularly glaring as the purported consideration—not instituting a holdover proceeding—is now the basis of plaintiff's theory of recovery in this action. Thus, since plaintiff is simultaneously (1) seeking back rent based upon Nanto being a holdover while (2) attempting to enforce Cross's personal guarantor agreement that was specifically intended to secure a 2015

---

[5] The Court notes that the first mention of plaintiff not considering Nanto a holdover for January 2015 is in *reply* to Cross's email further suggesting that both he and Ricky Zegelstein expected a renewed lease. (*See* NYSCEF doc. no. 158.)

**651743/2018   ELSA ZEGELSTEIN vs. NANTO MK CORP.**                                **Page 5 of 9**
**Motion No.  005**

renewed lease, Cross has received "no clear benefit" from any purported consideration on plaintiff's part. (*See Karam v Karam*, 197 AD3d 1041, 1041-1042 [1st Dept 2021].) As such, Cross is entitled to summary judgment as to plaintiff's claim for breach of the guaranty.

As to Kanaya's guaranty, the Court finds issues of fact as to whether the unenforceability of Cross's guaranty affects the purported guarantor substitution such that Kanaya can be held liable a guarantor of Nanto's holdover rent. The Court notes that neither Kanaya nor plaintiff's submissions address this issue.

The Nanto Alterations

Both parties recognize that the Lease required Nanto to obtain plaintiff's prior written consent before making "changes in or to the demised premises of any nature." (NYSCEF doc. no. 149 at ¶ 3.) The same paragraph then provides, "subject to the prior written consent of Owner and to the provisions of this article, Tenant, at Tenant's expense, may make alterations installations additions or improvements which are *non*structural, and which do *not* affect utility services or plumbing and electrical lines, in or to the interior." (*Id*. [emphasis added].) In her affidavit, Ricky Zegelstein alleges that neither she nor Elsa received notice of, let alone provide its consent, for Nanto to perform alterations. More specifically, she alleges that J&E Realty did not know about the "major changes to the structural, electrical, and the plumbing to the premises, including but not limited to adding a shower room and a separate message room." (NYSCEF doc. no. 147 at ¶ 16-17, Zegelstein affidavit.) She further avers that Nanto's alterations were not performed in compliance with applicable building codes or up to professional standards (though plaintiff neither cites a specific building code violation nor proffers evidence suggesting the changes were substandard). Since the Lease requires consent before *any* changes are made, irrespective of their quality and any applicable building codes, and plaintiff has both proffered evidence of Nanto's alterations (*see* NYSCEF doc. no. 153, repair estimates) and avers that neither Ricky nor Elsa Zegelstein gave such approval, the Court finds that plaintiff has made its prima facie showing of entitlement to judgment on this claim.

In opposition, defendants advance two arguments. For the first, Nanto and Cross allege that, upon entering into possession of the premises, Nanto immediately began to construct the improvements to the space to convert the rug showroom into a spa. (*See* NYSCEF doc. no. 151 at 27, Kanaya deposition transcript.) They further allege that Zegelstein knew of the changes by at least 2011, when Zhu became involved with Nanto's operation. (NYSCEF doc. no. 172 at ¶¶ 6, 11, Cross affidavit.) In fact, Cross testified in his deposition that the Department of Buildings ("the DOB") issued a citation based on Nanto's conversion of the first floor into a spa as being a violation of the building's certificate of occupancy but that Ricky Zegelstein defended against the citation, even arguing before the DOB at a hearing, and eventually forced the DOB to withdraw the citation. (NYSCEF doc. no. 156 at 70, Cross deposition transcript.) Given the timing of the alterations and Zegelstein's conduct, they contend that the applicable statute of limitation—six years—had expired when plaintiff commenced this action in April 2018 and/or that plaintiff waived their right to object to Nanto's use of the premises. [6]

---

[6] In the 2015 action, plaintiff argued that Nanto's *assignment* of the lease constituted a breach of the lease and precluded it from exercising its right of renewal. (*See* NYSCEF index no. 6505433/2015, doc. no. 187 at 6, plaintiff's 2015 memo of law.) The First Department found the argument persuasive and concluded that the non-

**651743/2018   ELSA ZEGELSTEIN vs. NANTO MK CORP.**

**Motion No.  005**

**Page 6 of 9**

6 of 9

The Court finds issues of fact remain as to the timeliness of plaintiff's claim. Where the statute of limitations is raised to bar a claim, the defendant bears the burden of establishing that the time within which to commence the claim has expired. (*Garron v Bristol House, Inc.*, 162 AD3d 857, 858 [2d Dept 2018].) Here, defendants have shown that this breach of contract claim accrued in or around 2010/2011 when the alterations were performed (not later when plaintiff alleges that it uncovered the alterations), which means that the applicable six-year statute of limitations extended, at the latest, to the end of 2017. Under this timeline, plaintiff's commencement in April 2018 clearly falls outside the statute of limitations.

In arguing that its claim is indisputably timely, plaintiff raises the continuing wrong doctrine, under which the breach of a continuing obligation resets the statute of limitations each day that the opposing party is in breach. (*See 1050 Tenants Corp. v. Lapidus*, 289 AD2d 145, 146 [1st Dept 2001] [Where a party commits a continuous or recurring wrong, "the wrong is not referable exclusively to the day the original wrong was committed; rather, a cause of action accrues anew every day, and for each injury"].) According to plaintiff, Nanto's alterations made without its consent constitute a continuing violation of the Lease and, as such, the limitation period did not begin to run until the end of the lease term. As the First Department recently clarified, however, what constitutes a "continuing" wrong is substantially narrower than what plaintiff argues. In *Great Jones Studios Inc. v Wells* (190 AD3d 587, 588 [1st Dept 2021]), the court addressed the doctrine specifically in the context of alterations a tenant performed that resulted in substantial damage to the landlord's building. The court explained that "where it is alleged that the complained-of conduct constituted not merely a violation of the lease, but a lease violation consisting of illegal conduct or conduct causing ongoing damage to other apartments," the usual six-year statute of limitations for contract actions is tolled for harms that cause damage within the six-year period. (*Id.*) It then held that the plaintiff-landlord was entitled to partial summary judgment because it had proffered undisputed evidence from an expert who concluded that the alterations were "unsafe, not to code, and…a risk." (*Id.*)

As described above, here, plaintiff alleges that the "alterations were not performed to the applicable codes, and were never inspected or approved by the New York City Department of Buildings and were substandard, leaked and caused water and structural damage to the Building." (*See* NYSCEF doc. no. 1 at ¶ 35; NYSCEF doc. no. 147 at ¶ 19.) Thus, in so far as plaintiff's claim is not solely based on a violation of a lease provision but also on violations of DOB codes, the Court holds the continuing wrong doctrine *may* apply to toll the limitations period on plaintiff's claim. Nonetheless, without proffering an affidavit from a qualified expert, plaintiff has failed to conclusively demonstrate that the changes/alterations violated DOB codes or were otherwise illegal or affected other leases in the building. As such, issues of fact remain outstanding as to whether the continuing wrong doctrine saves plaintiff's claim.

---

waiver provision in the original lease conclusively refuted Nanto's contention that J&E Realty's acceptance of rent constituted a waiver. J&E Realty did not argue that the alterations to the premises constituted a breach. Accordingly, the First Department's acknowledgment that "[Nanto] does not deny that it was in breach of certain lease provisions" does not have issue or claim preclusive effect.

**651743/2018   ELSA ZEGELSTEIN vs. NANTO MK CORP.**                                        **Page 7 of 9**
**Motion No.  005**

For the second argument, Kanaya contends that, although alterations were made, the Lease renders them plaintiff's property upon Nanto vacating the premises unless plaintiff served a demand upon Nanto to remove any alterations made. In relevant part, paragraph 3 provides:

> "All fixtures and all paneling, partitions, railing and like installations, installed in the demises premises at any time, by either Tenant or by Owner on Tenant's behalf, shall upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant, no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by tenant." (NYSCEF doc. no. 149 at ¶3.)

Thus, because plaintiff did not serve a demand, Kanaya maintains that it waived its right to charge for the cost to remove the the alterations. While Kanaya raises this argument in support of its cross-motion for summary judgment, the Court instead finds that it creates an issue of fact as to the parties' respective obligations and, in turn, plaintiff's available remedies. [7] On the one hand, as argued, the Lease clearly requires a demand for removal, without which, the fixtures become the Owner's property; on the other, paragraph 24 includes a Non-Waiver provision, and in paragraph 8, the Lease provides, "in the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke *any remedy* allowed at law or in equity as if re-entry, summary proceedings were not herein provided for." (NYSCEF doc. no. 149 at ¶ 18 [emphasis added].) Together, paragraphs 24 and 8 create, at the very least, an inconsistency with respect to whether plaintiff may bring this breach of contract claim after failing to serve a demand for removal. Since a contract is ambiguous if "on its face [it] is reasonably susceptible of more than one interpretation" (*see China Privatization Fund (Del), L.P., v Galaxy Entertainment Group, Ltd.* [1st Dept 2012]) and the parties have indeed each advanced a reasonable interpretation that suggests the Lease is internally inconsistent, plaintiff has not demonstrated entitlement to summary judgment.

Legal Fees

In its Notice of Motion, plaintiff seeks an order from the Court awarding it $534,141.18, plus $178,047.06 in attorneys' fees, or alternatively $300,849.06 plus $132,478.02 in attorneys' fees. While the 2009 Lease permits plaintiff to recover reasonable attorneys' fees *(see* NYSCEF doc. no. 149 at ¶ 19)*,* the Court cannot resolve whether said fees are reasonable based on the papers submitted.

Accordingly, for the foregoing reasons, it is hereby

---

[7] The parties' respective arguments on this issue are limited. First, defendants have not sought to establish that the alterations fit within the definition of the type of fixtures that require service of a demand. This, in itself, precludes summary judgment in defendants' favor. Second, although they suggest that the failure to serve a demand for removal is dispositive, this argument does not account for (1) whether they can invoke paragraph 3 in support of summary judgment while allegedly in breach of that same provision, and (2) what effect the Lease's No-Waiver provision in paragraph 24 has on paragraph 3. Plaintiff does not address any of these questions in its reply.

**651743/2018   ELSA ZEGELSTEIN vs. NANTO MK CORP.**                    **Page 8 of 9**
**Motion No.  005**

8 of 9

ORDERED that the branch of plaintiff's motion for summary judgment pursuant to CPLR 3212 as to its breach of contract for back rent pursuant to the 2009 Lease's Holdover Provision against defendant Nanto MK Corp is granted; and it is further

ORDERED that the Clerk of the Court is directed to enter judgment in favor of The Elsa Zegelstein Revocable Living Trust on liability against Nanto MK Corp. as to the above-described breach of the lease agreement, and it is further

ORDERED that the taking of an inquest and assessment of damages, including Holdover rent and reasonable attorneys fees, against The Elsa Zegelstein Revocable Living Trust shall be conducted at the time of the trial, and it is further

ORDERED that the branch of plaintiff's motion for summary judgment pursuant to CPLR 3212 against Nanto, Peter Cross, and Ying Jin Zhu for breach of contract based on the alleged 2010-2011 alterations to the premises is denied; and it is further

ORDERED that the branch of plaintiff's motion for summary judgment pursuant to CPLR 3212 as to its breach of the guarantor agreement against Cross is denied; and it is further

ORDERED that the branch of defendant Cross's cross-motion for summary judgment dismissing plaintiff's claim for breach of the guarantor agreement pursuant to CPLR 3212 is granted; and it is further

ORDERED that the branch of plaintiff's motion for summary judgment as to its breach of the guaranty agreement against Kanaya is denied; and it is further

ORDERED that the branch of plaintiff's motion for summary judgment pursuant to CPLR 3212 as to plaintiff's account stated claim is denied; and it is further

ORDERED that the branch of defendants' motion for summary judgment dismiss plaintiff's account stated claim pursuant to CPLR 3212 is granted; and it is further

ORDERED that plaintiff shall serve a copy of this order, along with notice of entry, on all parties within twenty (20) days of this order.

This constitutes the Decision and Order of the Court.

20241112174250DRAMSEURA12361FCA7304B4F81BAA5EB234E0CA3

| 11/12/2024 | | DAKOTA D. RAMSEUR, J.S.C. |
|---|---|---|
| DATE | | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
| | ☐ GRANTED ☐ DENIED | ☐ GRANTED IN PART | ☒ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**651743/2018   ELSA ZEGELSTEIN vs. NANTO MK CORP.**
**Motion No.  005**

Page 9 of 9

9 of 9

[* 9]